Filed 7/30/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ADRIAN LEE THOMPSON,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MARIN COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Real Party in Interest. | A175757<br><br>(Marin County<br>Super. Ct. No. CR0005705) |

We hold that a trial court has discretion to impose reasonable rehabilitative probationary conditions on a defendant who was granted mental health diversion under Penal Code section 1001.36.[1]

Petitioner, Adrian Lee Thompson (defendant), was charged with felony burglary and placed into a mental health diversion program under section 1001.36. As part of its diversion order, the trial court imposed a search clause, over defendant's objection, requiring him to submit to a search and seizure with or without probable cause or a warrant. Defendant contends the trial court has no authority to impose a search condition as part of an order

---

[1] All statutory references are to the Penal Code unless otherwise stated.

granting mental health diversion under section 1001.36. We disagree and deny defendant's petition for writ of mandate.

## BACKGROUND

The Marin County District Attorney filed a complaint charging defendant with one count of felony burglary (Pen. Code, §§ 459, 460, subd. (b)). The complaint alleged the following aggravating factors: defendant's prior convictions are numerous or of increasing seriousness; defendant served a prior prison term; and defendant had 19 prior felony convictions, from 2003 to 2015, for burglary (Pen. Code, § 459; eight prior convictions), fraudulent use of access cards or account information (Pen. Code, § 484g, subd. (a)), possession of stolen property (Pen. Code, § 496, subd. (a); two prior convictions), passing a forged document (Pen. Code, § 470, subd. (d); two prior convictions), unauthorized use of personal identifying information (Pen. Code, § 530.5, subd. (c)(2)), evading a police officer with reckless driving (Veh. Code, § 2800.2), possession of a forged instrument (Pen. Code, § 475; two prior convictions), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and grand theft (Pen. Code, §§ 484–487, subd. (a)).

At the preliminary hearing, a Marin County Sheriff's Office detective testified he responded on December 12, 2024, at 10:30 a.m. to a report of a theft at a medical office in a building complex in Mill Valley. A witness, who had an office in the complex, reported that the previous afternoon she observed a man loitering around the medical offices and looking into multiple offices. The witness later found the same man sitting in her private office rather than in the seating area in the main room. She asked him why he was in her office, and he said he was seeking treatment for his knee. The witness told him she did not treat knees and asked him to leave, which he did. The

2

witness later learned from two coworkers that items had been stolen from their purses. The victims told the detective they were missing multiple bank cards from their purses, which they kept in one of the private rooms in the medical offices. One of the victims received a fraud alert for one of her missing bank cards indicating the card was being used at a nearby department store.

The detective reviewed surveillance security video from the office complex and from the department store. He observed a man walking around the office complex as the witness had described. The department store's surveillance video from around the time of the fraud alert showed a woman walk through the store and then walk to a vehicle parked in the parking lot of an adjacent store. The detective used a license plate reader system to determine that the vehicle was a rental. Through further investigation, the detective learned that the phone number listed on the rental contract had been queried by law enforcement in South Carolina in an investigation of a similar commercial burglary involving the defendant. The detective also learned defendant was being investigated for another similar burglary in Washington. The detective obtained defendant's phone number from the Washington state officer and then obtained a search warrant for defendant's cell phone records. The cell phone records showed defendant's phone at the Mill Valley medical offices at the time of the burglary and then at the department store at the time of the fraud alert. Defendant was arrested on April 30, 2025.

Defendant was held to answer as charged. On May 27, 2025, defendant was arraigned on an information charging one count of second degree burglary (§§ 459, 460, subd. (b)). He waived his speedy trial rights. Trial was set for September 2025 and later reset for October 15, 2025.

On October 10, 2025, defendant filed a motion for mental health diversion under section 1001.36. He argued he was eligible for mental health diversion based upon diagnoses of depression and posttraumatic stress disorder. Defendant was diagnosed by Turning Point Community Programs and was prescribed medication and referred to Bay Area Community Services for therapy. On October 24, 2025, defendant filed supplemental information stating that he was on a waiting list for counseling/therapy and would be meeting with Turning Point Community Services on October 29, 2025, to discuss counseling services and treatment for his mental health disorders.

The People opposed the motion, arguing that although defendant had a qualifying mental health diagnosis, he had not established he was suitable for mental health diversion under section 1001.36, subdivision (c). Specifically, the People argued defendant had not presented evidence that in the opinion of a qualified mental health expert the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment.

Defendant filed a reply stating he had attended two therapy sessions and was scheduled to receive a plan for regularly scheduled therapy on November 18, 2025. Defendant attached additional records from Turning Point Community Programs summarizing his depression symptoms and stating he had a traumatic history and had struggled with opiate use for several years. He was prescribed an antidepressant.

On November 7, 2025, the trial court heard defendant's motion. The trial court noted defendant's extensive criminal record and questioned the lack of a treatment plan. The matter was continued for defendant to provide a treatment plan. On December 2, 2025, at the continued hearing, the defendant had not yet received further information from his treatment

provider. The trial court again expressed reservations about the lack of a treatment plan to satisfy defendant's particular mental health needs. The matter was again continued.

On December 11, 2025, defendant filed further documentation stating he was receiving treatment from a therapist through Bay Area Community Services and that the therapist agreed to issue periodic reports to the court evaluating defendant's compliance with his treatment plan and whether the treatment is meeting defendant's needs. Defendant attached a progress report from his therapist stating defendant had attended four appointments since October 30, 2025, and was satisfactorily meeting the requirements of his treatment plan.

At the December 12, 2025, continued hearing, the trial court reiterated its concerns about granting mental health diversion. It stated that given defendant's history of prior burglaries, it would not permit diversion without a search condition. Defendant objected to the imposition of a search condition. However, without waiving his objection, he agreed to comply with its terms. The trial court placed defendant on mental health diversion for a one-year period. The conditions of diversion included that defendant appear in court for progress reports every three months and comply with mental health treatment through Bay Area Community Services, including attending therapy sessions at least two times a month, following all recommendations of his treatment provider, and taking medications as directed by his provider. The trial court also imposed a search condition requiring defendant to "[s]ubmit to Search and Seizure of your person, vehicle, residence, and any property under your control any time of the day or night by any peace officer with or without probable cause, with or without a

5

warrant.  Defendant waives the specific consent and warrant requirements set forth in Penal Code sections 1546 and 1546.1.”

On January 30, 2026, defendant filed a motion requesting that the trial court reconsider and vacate its imposition of the search condition.  The People opposed the motion.  The trial court denied the motion for reconsideration, finding that it had the discretion to impose a search condition to ensure defendant complied with his mental health treatment and for protection of the public in light of defendant’s lengthy criminal history.

Defendant filed this petition for writ of mandate to compel the trial court to vacate the search condition imposed as part of defendant’s mental health diversion order.  We requested briefing.  After consideration of the petition, the informal oppositions filed by the Attorney General and the Marin County District Attorney, and defendant’s reply, we issued an order to show cause to consider the issue of first impression raised by the petition. (See *Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133, fn. 4.)  The Attorney General and the District Attorney filed returns, and defendant filed a traverse.

## DISCUSSION

Defendant contends section 1001.36 does not authorize the trial court to impose a search condition in granting a request for mental health diversion.  He claims section 1001.36 requires a defendant to waive the right to a speedy trial but does not require a waiver of other constitutional rights.[2]

_____

[2] Defendant acknowledges that section 1001.36, subdivision (m) provides specific procedures under which the prosecution may request an order prohibiting defendants from owning or possessing a firearm until they successfully complete diversion.  The prosecution must prove by clear and convincing evidence that the defendant poses a significant danger of causing personal injury to him- or herself or others by having possession of a firearm and that the firearm prohibition is necessary to prevent personal injury

6

According to defendant, the search condition is unauthorized and must be vacated. We begin with a discussion of the mental health diversion statute.

## I.     *Mental Health Diversion*

In 2018, the Legislature enacted the mental health diversion statute. (Stats. 2018, ch. 34, § 24.) The stated purpose of the statute "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)–(c).) A trial court "may, in its discretion," grant diversion to eligible defendants whom it finds to be suitable for diversion, under specified statutory criteria. (§ 1001.36, subd. (a).)

Section 1001.36, subdivision (f) defines pretrial diversion as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." The statute applies to the majority of misdemeanor and felony offenses, only excepting murder, voluntary manslaughter, child

---

"because less restrictive alternatives either have been tried and found to be ineffective or are inadequate or inappropriate for the circumstances of the defendant." (§ 1001.36, subd. (m)(2).) In this case, the trial court's diversion order imposes a firearm prohibition. However, defendant's petition does not contest the firearm prohibition. Thus, our opinion does not consider the propriety of the firearm prohibition imposed by the trial court.

7

molestation, rape, sexual assault, and use or possession of weapons of mass destruction. (§ 1001.36, subds. (a), (d).)

A defendant is eligible for diversion if (1) he or she has been diagnosed with a mental disorder "identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders," including posttraumatic stress disorder (but excluding antisocial personality disorder and pedophilia), and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b)(1)–(2).) "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

If a defendant satisfies the eligibility requirements, the court then considers whether defendant is suitable for pretrial diversion. Section 1001.36, subdivision (c) states a defendant is suitable for diversion if "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history,

the current charged offense, and any other factors that the court deems appropriate."[3]

Even if the trial court finds a defendant eligible and suitable for diversion, it retains discretion to deny diversion. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892.) "[T]his 'residual' discretion must be exercised ' "consistent with the principles and purpose of the governing law." ' [Citations.] That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community." (*Id.* at pp. 892–893.)

The period of diversion is limited to no longer than two years for defendants charged with a felony. (§ 1001.36, subd. (f)(1)(C).) If a defendant performs unsatisfactorily in the treatment program, or is charged with a new crime, the trial court may reinstate criminal proceedings. (§ 1001.36, subd. (g).) If a defendant performs satisfactorily in diversion, then the court shall dismiss the criminal charges at the end of the period of diversion and the arrest upon which the diversion was based shall be deemed never to have occurred. (§ 1001.36, subd. (h).) "A court may conclude that the defendant has performed satisfactorily if the defendant has substantially complied with the requirements of diversion, has avoided significant new violations of law

---

[3] Section 1170.18, subdivision (c) defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." Such felonies, known as " 'super strikes,' " are "sexually violent offenses, oral copulation with a child under 14, lewd or lascivious act with a child under 14, homicide, solicitation to commit murder, assault with a machine gun on a peace officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by life imprisonment or death . . . ." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.)

9

unrelated to the defendant's mental health condition, and has a plan in place for long-term mental health care." (*Ibid.*)

## II. ***Trial Court's Authority to Impose Search Condition***

Whether a trial court granting a defendant's request for mental health diversion may impose a search condition on the defendant during the diversionary period is an issue of first impression. Defendant argues the trial court abused its discretion by imposing the search condition because section 1001.36 does not authorize it to do so. Whether the trial court's action is authorized by statute is a question of law which we review de novo. (*People v. Braden* (2023) 14 Cal.5th 791, 804.)

" 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212.)

Sections 1001.35 and 1001.36 do not expressly refer to the imposition of rehabilitative conditions during the diversionary period, other than compliance with the treatment plan. Section 1001.36 provides four criteria

10

for the trial court to consider in determining whether a defendant is suitable for diversion.  (§ 1001.36, subd. (c).)  The first is that a mental health expert opines that the defendant's "symptoms of the mental health disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment."  (§ 1001.36, subd. (c)(1).)  The second and third criteria are that defendant must "consent[] to diversion and waive[] the . . . right to a speedy trial" and must also "agree[] to comply with treatment as a condition of diversion . . . ."  (§ 1001.36, subd. (c)(2)–(3).)  The final suitability factor is that the defendant will not pose an unreasonable risk of danger to public safety, as defined by section 1170.18, i.e., defendant is not likely to commit a super-strike offense, if treated in the community.  (*People v. Moine* (2021) 62 Cal.App.5th 440, 449–450; § 1001.36, subd. (c)(4).)

Defendant argues section 1001.36 provides for a waiver of only the right to a speedy trial and Second Amendment rights in certain circumstances.  This, he claims, makes clear that there is no statutory authority for a trial court to impose a search condition, which requires an additional constitutional waiver.  We find that defendant's position improperly focuses only on parts of the statute in isolation and, thus, reads the statute too narrowly without consideration of the context of the entire statutory scheme.  (*People v. Braden, supra*, 14 Cal.5th at p. 804.)

Consideration of the complete statutory language of sections 1001.35 and 1001.36 reveals the breadth of the trial court's discretion to decide whether to grant diversion, and the absence of any prohibition on the trial court's ability to impose reasonable rehabilitative conditions during the period of diversion.  Section 1001.36, subdivision (a) states "the court *may, in its discretion*, and after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant" if the defendant satisfies

the eligibility requirements and the court determines defendant is suitable for diversion.  (§ 1001.36, subd. (a), italics added.)  Subdivision (f) states diversion is "subject to" the following:  "The court is satisfied that the recommended . . . program of mental health treatment will meet the specialized mental health treatment needs of the defendant," and "[b]efore approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community."  (§ 1001.36, subd. (f)(1)(A)(i)–(ii).)  Subdivision (h) provides that "[a] court may conclude that the defendant has performed satisfactorily if the defendant has substantially complied with *the requirements of diversion*, has avoided significant new violations of law unrelated to the defendant's mental health condition, and has a plan in place for long-term mental health care."  (§ 1001.36, subd. (h), italics added.)  Subdivision (k) generally prohibits the use in other proceedings of a finding that a defendant suffers from a mental disorder and progress reports regarding defendant's treatment, except that "when determining whether to exercise its discretion to grant diversion under this section, a court may consider previous records of participation in diversion under this section." (§ 1001.36, subd. (k).)

These various provisions, when read together, indicate that the trial court's discretion whether to grant diversion includes consideration of whether the proposed treatment plan is appropriate to meet the individual needs of the defendant and will protect the community.  Further, in determining whether a defendant has successfully completed diversion such that the case shall be dismissed, the trial court is to consider whether the defendant has "substantially complied with the requirements of diversion . . . ."  (§ 1001.36, subd. (h).)

12

As discussed *ante*, section 1001.35 also refers to a court's discretion and the necessity for flexibility in implementing diversion. It explains the purpose of the statute includes increasing diversion of individuals with mental health disorders "while protecting public safety," "[a]llowing local discretion and flexibility for counties in the development and implementation of diversion," and "[p]roviding diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35.)

When read as a whole, sections 1001.35 and 1001.36 emphasize the legislative goal of broadly increasing mental health diversion as an alternative to criminal proceedings. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 [in interpreting a statute, "we do not consider the statutory language in isolation" but, "[r]ather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision' "].) The statute applies to the majority of crimes and to nearly all recognized mental health disorders, excepting only antisocial personality disorder and pedophilia. (§ 1001.36, subd. (b)(1).) At the same time, both code sections emphasize the trial court's discretion in deciding whether to grant diversion. (§§ 1001.35, subd. (b), 1001.36, subds. (a), (f), (h), (k).) Even when a defendant meets the eligibility and suitability requirements, the court "may still exercise its discretion to deny mental health diversion . . . ." (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.) Courts have referred to the trial court's discretion to deny diversion even when a defendant meets all the express statutory requirements as " 'residual' " discretion and have held that it must be exercised " ' "consistent with the principles and purpose of the governing law." ' " (*Sarmiento v. Superior Court, supra*, 98 Cal.App.5th at pp. 892–893.) The statutory language thus reflects a legislative intent of broad

13

application of mental health diversion in many, varied circumstances by tailoring treatment plans to meet the particular needs of individual defendants while, at the same time, considering the interests of the community.  (§ 1001.36, subds. (b), (c) & (f)(1)(A).)  Imposing reasonable rehabilitative conditions during the period of diversion is consistent with the statute's stated purposes of increasing mental health diversion while protecting the public and allowing for discretion and flexibility to meet a defendant's unique needs.  (§ 1001.35.)  However, nothing in the statute expressly states a trial court may impose reasonable rehabilitative conditions during the diversionary period.  To resolve whether such conditions are permissible, we next turn to the legislative history.

The author of Senate Bill No. 215 (2017–2018 Reg. Sess.) explained that "under current law, the trial courts have little ability to rehabilitate mentally ill Californians charged with even minor criminal offenses, without first convicting them of the underlying offense . . . ."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Jan. 3, 2018, p. 5.)  The author further explained that the proposed bill gives trial courts the discretion to offer diversion to defendants suffering from mental illness and that, "[i]n essence, if appropriate, a court *may (but is not required to) impose the same rehabilitative probationary conditions* on a defendant it would have imposed had the defendant been convicted (including that the defendant comply with a mental health treatment plan, obey all laws and make restitution to any victims), with the added incentive that successful completion of diversion would result in dismissal of the criminal case, without the permanent detriment of a criminal record."  (*Ibid.*, italics added.)  Subsequent analyses of the Assembly and Senate Committees on Public Safety include the same statement.  (See Assem. Com. on Public

14

Safety, Analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Jan. 25, 2018, p. 5; Sen. Com. on Public Safety, 3d reading analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Aug. 6, 2018, p. 3; Sen. Com. on Public Safety, 3d reading analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 3.)

In *People v. Braden, supra*, 14 Cal.5th 791, 825, our Supreme Court held that a defendant may request mental health diversion before jeopardy attaches at trial or before entry of a plea of guilty, whichever occurs first. In deciding the question of the timeliness of a diversion request, *Braden* considered the legislative history and explained that the mental health diversion statute was intended to remedy the trial court's inability to order treatment prior to a defendant's conviction and placement on probation. (*Id.* at p. 821.) It quoted the author's statement in support of Senate Bill No. 215 (2017–2018 Reg. Sess.) explaining that a court may impose " ' "the same rehabilitative probationary conditions on a defendant it would have imposed had the defendant been convicted . . . ." ' " (*People v. Braden*, at p. 822, citing Assem. Com. on Public Safety, Analysis of Sen. Bill No. 215, *supra*, at p. 5, italics omitted.)

The author of the bill also explained that "[t]he permissive nature of this bill would provide judges the discretion to admit or deny a defendant with specified mental health issues to the diversion program. If a judge feels that a defendant's participation in a diversion program is not appropriate from the standpoint of public safety, or any other reason, the judge can prohibit the defendant from participating in diversion . . . . A judge would maintain discretion *to fashion appropriate conditions for participation in, and successful completion of, diversion*. Courts would have the *discretion to tailor the conditions of the diversion* to meet the needs of the individual defendant

15

and the community based on the circumstances of each case." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 215, *supra*, p. 7, italics added.)

Defendant does not directly address the legislative history relied upon by the People. Although he acknowledges *People v. Braden*'s consideration of the statement of the bill's author regarding "rehabilitative probationary conditions," he appears to argue that because *Braden* did not consider the issue raised in this petition, the People's reliance on the legislative history cited by *Braden* is misplaced. He also harks back to his argument that the plain meaning of section 1001.36 requires only that defendant agree to comply with the treatment plan and waive his speedy trial right and, therefore, the legislative history need not be considered. As explained *ante*, we believe defendant improperly focuses only on a portion of the suitability requirements in isolation instead of considering the statutory language as a whole and the context of the statutory scheme.

Our review of the legislative history, the statutory language, and the context of the mental health diversion statutes leads us to conclude the Legislature intended to permit courts, in exercising their discretion to grant diversion, to impose tailored, reasonable rehabilitative conditions on diverted defendants in appropriate cases to meet the needs of both the defendants and the community. Allowing trial courts to grant diversion in a case such as defendant's, while imposing reasonably related conditions during the diversionary period, rather than simply denying diversion furthers the statutory goals of providing mental health treatment to qualifying defendants and protecting public safety.[4] Here, the trial court acted within its discretion

---

[4] We recognize that one of the suitability requirements is a finding that the defendant "will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18 if treated in the community." (§ 1001.36, subd. (c)(4).) This is a more narrow definition of public safety risk, requiring

16

when it granted mental health diversion to defendant with the added condition that he submit to searches during the diversionary period.  Based on defendant's decades-long criminal record for similar crimes, the search condition was reasonable, and defendant does not contend otherwise. (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

### III. *Previous misdemeanor drug diversion case law is inapplicable to diversion under section 1001.36.*

Defendant relies upon prior cases that hold there is no statutory authority for a court to impose search conditions on defendants under statutes providing for misdemeanor drug diversion and informal supervision of juvenile offenders.  As we explain, we agree with the People that the cases

---

a finding that there is not a likelihood defendant will commit a violent felony listed in section 667, subdivision (e)(2)(C)(iv).  (§ 1170.18, subd. (c).)  Thus, as a trial court may only find a defendant suitable for diversion if it first determines defendant is not likely to commit a violent felony, as defined. (§ 1001.36, subd. (c).)  Appellate courts have held that trial courts may not reject a request for diversion based on an alternative meaning of public safety under the "guise" of exercising its "residual" discretion.  (E.g., *Sarmiento v. Superior Court, supra*, 98 Cal.App.5th at p. 896; *People v. Moine, supra*, 62 Cal.App.5th at pp. 450–451.)  Here, the trial court did not deny diversion based upon a public safety risk, and we express no opinion on the issue raised in *Sarmiento* and *Moine*.  The trial court's grant of diversion with the accompanying search condition was based, in part, on the trial court's stated concern for the protection of the public considering defendant's lengthy criminal history.  Defendant's petition does not argue that the trial court improperly considered the community's interest or improperly relied upon an alternative definition of public safety.  We note that section 1001.36, subdivision (f)(1)(A)(ii) expressly states that before approving a proposed treatment plan, "the court shall consider . . . the interests of the community," and section 1001.35, subdivision (a) states the purpose of mental health diversion is to "[increase] diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety."  Accordingly, the trial court properly considered the community's interest when it granted diversion with a search condition.

are distinguishable because they are based on a narrower type of diversion that applies to low-level drug offenses or first-time juvenile offenders.

The first in the line of cases relied upon by defendant is *Morse v. Municipal Court* (1974) 13 Cal.3d 149, in which a defendant charged with possession of marijuana, who was eligible to consent to diversion under section 1000 et seq. in lieu of criminal prosecution, instead pleaded not guilty and moved to suppress the evidence against him. (*Morse*, at p. 154.) After the defendant's suppression motion was denied, he sought to consent to diversion. The trial court denied diversion, ruling the defendant elected to proceed with criminal prosecution when he opted to move for pretrial suppression. (*Ibid.*) The issue before the Supreme Court was the "narrow one of how far into the criminal process a defendant may go before he can no longer be afforded the right to *consent to consideration for diversion* under section 1000.1 . . . ." (*Id.* at p. 155.) The Supreme Court found that the plain meaning of section 1000.1 made defendant's consent to consideration for diversion contingent upon a simultaneous waiver of speedy trial rights and that defendant's consent to consideration for diversion should be tendered prior to commencement of trial. (*Morse*, at p. 156.) The statutory language did not specify a particular point during the pretrial period beyond which consent to diversion could be tendered. (*Id.* at p. 157.) The Supreme Court considered the legislative purpose of section 1000.1 diversion and found that requiring a defendant to defer a motion to suppress was inconsistent with the legislative purpose of encouraging the broadest possible participation in drug treatment programs. (*Morse*, at p. 158.) It reasoned that section 1000.1 "requires waiver of the constitutional and statutory right to a speedy trial as a condition of eligibility but does not refer to waiver of any other constitutional right or procedural step. Hence, the exclusion of the deferral of

a motion to suppress as a condition of diversion is negatively implied." (*Morse*, at p. 159.) It held that defendants may consent to diversion and waive their speedy trial rights *at any time prior to the commencement of trial* and that defendants may bring pretrial motions prior to consenting to consideration for diversion. (*Id.* at p. 160.)

Morse was relied on a year later in *Frederick v. Justice Court* (1975) 47 Cal.App.3d 687, which directly addressed the question of whether a court may impose a search condition in ordering diversion under section 1000 for a misdemeanor charge of possession of amphetamine. (*Frederick*, at pp. 688– 690.) The Court of Appeal held that the imposition of a search condition during the period of diversion is neither expressly nor impliedly authorized by the statute. (*Id.* at pp. 691–692.) It explained that the diversion statutes at issue required a defendant to waive the right to a speedy trial, and no other constitutional right. (*Id.* at p. 690.) It further found there was no compelling necessity to justify the infringement of the constitutional rights of a defendant eligible for diversion because although the purpose of the diversion program is rehabilitation, eligible defendants are not those " 'deeply involved with drugs,' but rather 'the experimental or tentative user.' " (*Id.* at p. 691.) Accordingly, the Court of Appeal concluded, the "lack of statutory authorization and the lack as well of a compelling necessity therefor placed the imposition of this condition of an express waiver of a constitutional right beyond the court's powers in a proceeding that is wholly and exclusively statutory." (*Id.* at p. 692.)

Defendant also relies upon *Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, which held the trial court had no authority to impose a search condition on a juvenile it found eligible for informal supervision under Welfare and Institutions Code section 654.2. (*Derick B.*, at p. 306.) *Derick B.*

explained that the informal supervision program applied only to first-time minor offenders who were alleged to have committed no more than misdemeanors or infractions. (*Id.* at p. 304.) The relevant statutes did not specifically include a Fourth Amendment waiver as a condition of informal supervision (*Derick B.*, at p. 305), whereas the deferred entry of judgment program under Welfare and Institutions Code section 790, which applied to "slightly more seasoned minor offender[s]," did specifically provide for a mandated Fourth Amendment waiver as a condition of granting deferred entry of judgment. (*Derick B.*, at p. 305.) *Derick B.* found no legislative authority for imposing a search condition when a minor is granted informal supervision under Welfare and Institutions Code section 654 or 654.2. (*Derick B.*, at p. 305.) It analogized the informal supervision program for minors to adult diversion under Penal Code section 1000, and it found they are each " 'a creature of statute,' " neither of which expressly includes authority for imposing a search condition. (*Derick B.*, at p. 306.)

The cases on which defendant relies involve diversion or informal supervision under different statutory schemes that apply to a much more limited group of individuals than the mental health diversion statutes. Misdemeanor drug diversion under section 1000 applies to certain individuals charged with simple possession of drugs for personal use or being under the influence of a controlled substance. (§ 1000, subd. (a).) Diversion under section 1000 is further limited to defendants who have no prior felony convictions within the last five years (§ 1000, subd. (a)(4)) and cases in which the offense charged did not involve a crime of violence or threatened violence and there is no evidence of a contemporaneous violation relating to narcotics or restricted dangerous drugs (§ 1000, subd. (a)(2)–(3)). As described by the *Frederick* court, an eligible defendant is not " 'deeply involved with drugs' "

20

but is an " 'experimental or tentative user.' " (*Frederick v. Justice Court, supra*, 47 Cal.App.3d at p. 691.)  The informal supervision program for juvenile offenders at issue in *Derick B.* applies to first-time offenders who have committed misdemeanors or infractions, and generally precludes minors who have previously been on informal supervision, who have had a prior wardship judgment, and who are over 14 years of age and alleged to have committed a felony.  (*Derick B., supra*, 180 Cal.App.4th at p. 304.)

In contrast, the mental health diversion statute may broadly apply to defendants charged with a wide array of crimes (excluding only murder, voluntary manslaughter, child molestation, rape, sexual assault, and use or possession of weapons of mass destruction) and who suffer from a wide range of mental health disorders (excluding only antisocial personality disorder and pedophilia).  (§ 1001.36, subds. (b)(1), (d)(1)–(8).)  Nor is mental health diversion limited to first-time offenders.  (§ 1001.36, subds. (b) & (c).) Nothing in the statute excludes defendants, such as the defendant here, with extensive criminal histories.  (*Ibid.*)  Defendant's cited cases are also distinguishable because none of them references legislative history specifically stating that "a court may . . . impose the same rehabilitative probationary conditions on a defendant that it would have imposed had the defendant been convicted . . . ."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 215, *supra*, at p. 5.)

In sum, we find that a trial court may, in exercising its discretion to grant diversion, impose reasonable "rehabilitative probationary conditions" on defendant during the diversionary period.  Our holding is consistent with the language of sections 1001.35 and 1001.36, which gives the trial court discretion to grant mental health diversion and explains the goals of tailoring diversion to meet the unique needs of each defendant, maintaining flexibility,

21

and protecting public safety while the defendant is treated in the community. (§§ 1001.35, subds. (a)–(c), 1001.36, subd. (a).)  It is also consistent with the multiple references in the legislative analyses of the bill to the trial court's discretion to impose "rehabilitative probationary conditions."  (See pp. 14–15, *ante*.)  Defendant has 19 prior convictions, mostly for theft-related offenses similar to the charged offense.  The record discloses the trial court, despite stated reservations about granting diversion, reasonably considered defendant's lengthy criminal history before deciding to grant diversion with a search condition.  Defendant does not argue that the search condition was unreasonable under the circumstances.  Similar search conditions imposed as probation conditions have been upheld as having a valid rehabilitative purpose.  (See *People v. Balestra* (1999) 76 Cal.App.4th 57, 67–68.)  Here, the search condition was reasonably related to the charged offense of burglary, particularly given defendant's decades-long history of similar crimes.  (*People v. Lent, supra*, 15 Cal.3d at p. 486.)

### DISPOSITION

The petition for writ of mandate is denied.


Jackson, P. J.


WE CONCUR:

Simons, J.
Chou, J.


A175757/*Thompson v. Superior Court*

A175757/Thompson v. Superior Court

Trial Court:        Superior Court of the County of Marin

Trial Judge:       Kelly Simmons

Counsel:          David Sutton, Marin County Public Defender, and Jeff Mitchell, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Charles C. Ragland and Jeffrey M. Laurence, Assistant Attorneys General, Bridget Billeter and Dorian Jung, Deputy Attorneys General, for Real Party in Interest.

Lori E. Frugoli, Marin County District Attorney, Dori K. Ahana, Shari A. Goldman and Daniel L. Madow, Deputy District Attorneys, for Real Party in Interest.